(42 P.3d 1197)

No. 86,394

STATE OF KANSAS, *Appellee*, v. DANIEL LYNN HARTPENCE, *Appellant*.

Opinion filed March 22, 2002.

*Korey A. Kaul*, assistant appellate defender, and *Steven R. Zinn*, deputy appellate defender, for the appellee.

*Heather R. Landon*, assistant county attorney, *John R. Dowell*, county attorney, and *Carla J. Stovall*, attorney general, for the appellant.

Before PIERRON, P.J., JOHNSON, J., and BUCHELE, S.J.

PIERRON, J.: Daniel L. Hartpence, a juvenile, was prosecuted as an adult on charges of rape and aggravated criminal sodomy. Hartpence entered *Alford* pleas to two counts of aggravated indecent liberties with a child, severity level 3 person felonies, in violation of K.S.A. 21-3504(a)(3)(A). See *North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). Hartpence argues on appeal that the magistrate judge erred in ruling he should be prosecuted as an adult, that the district court had jurisdiction to consider an appeal of the magistrate's decision, that prosecuting him as an adult substantially increased the penalty in violation of his constitutional rights, and that presuming he should be prose-

cuted as an adult under K.S.A. 38-1636(a)(2) violated his due process rights.

In April 1998, H.A.O., a 7-year-old girl, lived with her mother, two brothers, and three of her mother's friends, including a friend named Tyler. Hartpence was a friend of Tyler. On April 14, 1998, H.A.O. was sleeping against the wall in two beds pushed together. She said her two brothers and Tyler were sleeping with her. H.A.O. testified that she woke up to find Hartpence "licking [her] where [she] goes to the bathroom." H.A.O. tried to stop Hartpence by rolling over, but he held her shirt and would not let her roll over. H.A.O. stated that after Hartpence stopped licking her, he put his finger inside her vagina. H.A.O. said that Hartpence eventually stopped, but stayed in the bedroom. H.A.O. left the bedroom and went downstairs. H.A.O. said she did not tell her mother immediately because she was afraid Hartpence would hurt her. However, H.A.O. revealed the incident the next day.

On April 16, 1998, Hartpence was charged in juvenile court with one count of rape and one count of aggravated criminal sodomy. At the time of the offense, Hartpence was approximately 17 years and 5 months old. The State filed a motion to prosecute Hartpence as an adult. After hearing evidence, the magistrate judge granted the State's motion. The magistrate judge granted a hearing on Hartpence's motion for reconsideration. After hearing a large amount of expert testimony, the magistrate judge affirmed his ruling to allow the State to prosecute Hartpence as an adult.

On July 8, 1998, Hartpence was formally charged as an adult with one count of rape and one count of aggravated criminal sodomy, both severity level 2 person felonies. On March 8, 1999, Hartpence entered an *Alford* plea to two counts of aggravated indecent liberties with a child, severity level 3 person felonies, in violation of K.S.A. 21-3504(a)(3)(A). The district court sentenced Hartpence to a controlling term of 74 months' incarceration.

Hartpence first argues the magistrate judge erred in certifying him as an adult. The standard for reviewing the decision to authorize prosecution of a juvenile as an adult is whether the decision is supported by substantial evidence. *In re J.D.J.*, 266 Kan. 211, 216, 967 P.2d 751 (1998); *State v. Claiborne*, 262 Kan. 416, 420,

940 P.2d 27 (1997). Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. *State v. Garcia*, 250 Kan. 310, Syl. ¶ 3, 827 P.2d 727 (1992).

Under K.S.A. 38-1636(a), Hartpence was presumed to be an adult and he had the burden to rebut the presumption. K.S.A. 38-1636(e) sets forth the factors to be considered when determining whether to treat a defendant as an adult or a juvenile. These factors must be considered by the court even where there is a presumption that the defendant is an adult under K.S.A. 38-1636(a)(2). K.S.A. 38-1636(e) states in pertinent part:

> "In determining whether or not prosecution as an adult should be authorized or designating the proceeding as an extended jurisdiction juvenile prosecution, the court shall consider each of the following factors: (1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult or designating the proceeding as an extended jurisdiction juvenile prosecution; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or against property. Greater weight shall be given to offenses against persons, especially if personal injury resulted; (4) the number of alleged offenses unadjudicated and pending against the respondent; (5) the previous history of the respondent, including whether the respondent had been adjudicated a juvenile offender under this code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the respondent as determined by consideration of the respondent's home, environment, emotional attitude, pattern of living or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the respondent or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution."

After analyzing the K.S.A. 38-1636(e) factors, the magistrate judge ruled there was substantial evidence to support Hartpence's prosecution as an adult. The only evidence presented at the initial hearing was the testimony of Hartpence's mother, who testified Hartpence was a learning disabled child, that he was less mature than other kids in the special education classes, and that his maturity level was that of a 12-year-old. At the hearing on the motion for reconsideration, Hartpence presented additional testimony

from several experts who had examined him, including a speech pathologist, a neuropsychologist, and an forensic psychiatrist. The factors in K.S.A. 38-1636(e), as applied to Hartpence, are as follows:

*(1) The seriousness of the alleged offense and whether protection of the community requires prosecution as an adult.*

Hartpence argues there was no evidence to suggest he posed a risk to society and that society would be better protected if he was adjudicated as a juvenile and allowed the supervision and therapy recommended by Dr. Peterson. Hartpence argues the two halves of factor (1) cancel each other out and should have had no effect on the magistrate judge's decision.

The magistrate judge found both charges of rape and aggravated criminal sodomy were severity level 2 person felonies and were among the most severe criminal charges available for prosecution under the Kansas Criminal Code. He found the charges were certainly appropriate for prosecution as an adult. He also found that if the allegations were proven, the victim was 7 years old and the protection of the community would be a significant factor for consideration. These findings are supported by the record.

*(2) Whether the offense was committed in an aggressive, violent, premeditated, or willful manner.*

Hartpence argues that although his crimes were morally repugnant, there is nothing to suggest his crimes were committed in an aggressive, violent, premeditated, or willful manner.

The magistrate judge stated that Hartpence did not present any evidence to counter this factor. The judge indicated the victim was a 7-year-old female nearly 10 years younger than Hartpence. He found Hartpence had violated the victim in two "particularly odious forms" and held that, given this fact in conjunction with the tender age of the victim, the crime was a violent offense.

At the reconsideration hearing, the magistrate judge again emphasized the young age of the victim:

"[T]he violence of this to that individual and from that individual's perception cannot be disregarded by the Court and is a substantial contributor to the Court's determination today's date that this individual should be prosecuted as an adult.

Obviously this was done in an aggressive manner and it was done in a willful manner. Quite possibly it was done in a premeditated manner."

Again, the findings are supported by the record.

(3)  *Whether the offense was against a person or against property.*

The magistrate judge found the facts clearly indicated the crime was against a person and that K.S.A. 38-1636(e)(3) required the court to give greater weight to offenses against persons, especially in the event of personal injury. The court stated that the nature of the offenses, if proven, could cause severe psychological injury to the victim.

Hartpence argues there was no evidence presented that the victim suffered severe psychological injury and this factor should not count against him. The factor does not require severe injury and was properly analyzed by the court.

(4)  *The number of alleged offenses unadjudicated and pending against the respondent.*

There were no unadjudicated or pending charges against Hartpence.

(5)  *The previous history of the respondent, including whether the respondent had been adjudicated a delinquent or miscreant.*

The magistrate judge found Hartpence had previously been found to be a juvenile offender in a prior adjudication of aggravated battery. Hartpence's previous adjudication for aggravated battery occurred when he stabbed a peer in shop class with a cold chisel. The court noted the previous offense again involved a person as opposed to property, that the previous crime was of a violent nature, and that he caused injury to the victim.

(6)  *The sophistication or maturity of the respondent.*

Hartpence argues all of the witnesses at the reconsideration hearing testified he was either emotionally or intellectually substantially below the standard for an average 17-year-old. He states that Dr. Peterson testified his home environment was emotionally

and psychologically infantile. Ms. Burn and Dr. Cowan testified that Hartpence's mental functioning and cognitive abilities were of a child much younger than 17. Hartpence argues there was overwhelming evidence of his impaired maturity level and that he should have been adjudicated as a juvenile.

The court considered Hartpence's home environment, emotional attitude, and pattern of living. The court found that Hartpence's sophistication and maturity weighed against prosecuting him as an adult. However, after hearing all the expert testimony at the hearing on the motion for reconsideration, the court commented:

"There's little doubt in this Court's minds eye that if one single component of that, that calculus of eight were to be determinative on the intellectual and the emotional development of the individual or particular subsection, subsection 6, that that factor alone might carry the, carry the case back into juvenile Court system. Nonetheless, there are other criteria that do have to be weighed in conjunction with this. . . ."

*(7) Whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction.*

At the reconsideration hearing, the magistrate judge acknowledged the expert testimony concerning whether Hartpence could be rehabilitated. However, the court clearly questioned whether the necessary rehabilitation could be completed prior to expiration of the court's jurisdiction under the juvenile code. The court stated:

"I think that the testimony of each and every one of the experts was that there are a very, very, very great many miles who would necessarily have to be traveled in order to bring this, this individual up, up to parity in his level of functioning, his level of intellectual, and his level of emotional development. There are simply not the years available. There are quite frankly not the resources available within the juvenile justice authority's system to even begin to make the necessary progress that would require, be required within the remaining years under which he could be subject to the Court's jurisdiction so as to allow him to return to society out of that structure and not be a continuing threat to the community."

The court's determination that there were no resources available which were likely to rehabilitate Hartpence in the applicable time frame was well supported by the evidence.

*(8)    Whether the interests of the respondent or of the community would be better served by criminal prosecution.*

The magistrate judge found, similar to factor K.S.A. 38-1636(e)(1), that Hartpence's alleged offenses were highly appropriate for prosecution as an adult. At the reconsideration hearing, the judge stated that it was necessary to assure society, through the operation of the criminal justice system, that appropriate adult level sanctions were available to be imposed on Hartpence.

The magistrate judge also noted that Hartpence was 17 years and 5 months old when he committed the offenses and was nearing the age of 18 when he would be automatically prosecuted as an adult. The court emphasized that Hartpence himself was not a juvenile of tender age when he committed the offense, but was a juvenile near the age of adulthood. Weighing all the factors, the magistrate judge found the factors listed in K.S.A. 38-1636(e)(1), (2), (3), (5), (7), and (8) sufficiently outweighed the mitigating evidence in K.S.A. 38-1636(e)(6) and that Hartpence should be prosecuted as an adult.

The insufficiency of evidence pertaining to any one or more of the factors listed in K.S.A. 38-1636(e) is not, in and of itself, determinative of the issue. *In re J.D.J.*, 266 Kan. at 218. There is no requirement that evidence be presented on each and every factor set forth in the statute. *State v. Stephens*, 266 Kan. 886, 892, 975 P.2d 801 (1999). The standard for evaluating the certification of a juvenile to be tried as an adult is whether the decision as a whole is supported by substantial competent evidence. It is not error for the court to give greater weight to some factors than it gives to others when evaluating the waiver. *State v. Smith*, 268 Kan. 222, 244-45, 993 P.2d 1213 (1999).

We find there is substantial evidence to establish factors (1), (2), (3), (5), (7), and (8) of K.S.A. 38-1636(e) in favor of adult prosecution. We also recognize there is substantial evidence to establish factor (6) in favor of keeping Hartpence in the juvenile system. This was not an easy case and the magistrate judge went to some pains in examining the totality of the situation and in setting forth his decision in great detail. The magistrate judge considered each

of the 8 factors in K.S.A. 38-1636(e) and weighed those factors either in favor or against prosecuting Hartpence as an adult. Under a substantial competent evidence standard of review, it is not for this court to reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. *In re J.D.J.*, 266 Kan. at 223. We also do not forget that because of his age, Hartpence is presumed to be an adult in this case. The record as a whole reflects there was substantial evidence to support the magistrate judge's decision that Hartpence should be prosecuted as an adult.

Hartpence next argues the district court erred in holding that it lacked jurisdiction to consider his appeal from the magistrate judge's ruling.

On July 1, 1998, the magistrate judge granted the State's motion to try Hartpence as an adult. After a change in attorneys, Hartpence filed and was granted a reconsideration of the magistrate judge's decision. In the meantime, Hartpence filed a notice of appeal, but later withdrew it, conceding an appeal was only allowed after a conviction and in the same manner as other criminal appeals pursuant to K.S.A. 38-1681. At the reconsideration hearing, the magistrate judge denied Hartpence's motion and allowed the State to dismiss the juvenile complaint and refile charges in district court.

On March 8, 1999, Hartpence entered an *Alford* plea to two counts of aggravated indecent liberties with a child. The district court sentenced Hartpence to 74 months' incarceration on the first count and a concurrent term of 46 months' incarceration on the second count.

At the end of the sentencing hearing, defense counsel informed the court she had prepared a notice of appeal to the district court of the magistrate judge's decision to prosecute Hartpence as an adult. The court set the matter over for hearing. After a full hearing, the district court denied Hartpence's request for an appeal to the district court. The court held: "Daniel Hartpence's appeal must be taken to the Appellate Court, not this Court; that this Court does not have jurisdiction to hear the appeal of the Magistrate's finding; and order authorizing prosecution of Mr. Hartpence as an adult."

The issue raised by Hartpence involves the interpretation of various statutes. Interpretation of a statute is a question of law and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000).

Two statutes are in conflict. K.S.A. 38-1683(a) provides that "[a]n appeal from a district magistrate judge shall be to a district judge." On the other hand, K.S.A. 38-1681(a)(1) provides that an appeal from an order authorizing prosecution as an adult "shall be taken only after conviction and in the same manner as other criminal appeals." Although Hartpence did not ask the district court to consider K.S.A. 38-1683(a), he asks this court to reverse based on the statute.

When there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling. *State v. Wilson*, 11 Kan. App. 2d 504, Syl. ¶ 1, 728 P.2d 1332 (1986); see *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985). K.S.A. 38-1683 is the general statute in the situation presented to the court. K.S.A. 38-1683 applies to all decisions of a magistrate judge. However, K.S.A. 38-1681 applies only to decisions concerning a determination that a juvenile should be prosecuted as an adult.

K.S.A. 38-1681(a)(1) states that the appeal shall be only after a conviction and in the same manner as other criminal appeals. Interpreting K.S.A. 38-1681(a)(1) leads to the conclusion that the district court did not err in finding an appeal of a magistrate judge's decision to prosecute a juvenile as an adult is properly filed with the appellate courts, not the district court, after a conviction. "The rule of strict construction means that ordinary words are to be given their ordinary meaning." *Matjasich v. State Dept. of Human Resources*, 271 Kan. 246, 252, 21 P.3d 985 (2001). We read K.S.A. 38-1681(a)(1) to mean that after a juvenile has been tried and convicted as an adult under the Kansas Criminal Code, the normal appeal goes to the appropriate appellate court, and the appeal of

the magistrate judge's decision to prosecute the juvenile as an adult will follow along with that criminal appeal.

Our research of Kansas case law supports our ruling that the district court did not err in finding it lacked jurisdiction. All cases addressing the appeal of an order authorizing prosecution of a juvenile as an adult have been to the Kansas appellate courts. No party has challenged jurisdiction. See, *e.g.*, *State v. Smith*, 268 Kan. 222; *Findlay v. State*, 235 Kan. 462, 681 P.2d 20 (1984).

Recently, the Kansas Supreme Court addressed virtually an identical case without any mention of whether the case was proper in terms of jurisdiction. In *State v. Avalos*, 266 Kan. 517, 974 P.2d 97 (1999), the Kansas Supreme Court considered an appeal from a district magistrate judge's order authorizing the defendant's prosecution as an adult pursuant to K.S.A. 38-1636. Avalos entered an *Alford* plea to lesser charges and then appealed the decision to the Kansas Supreme Court. We find the *Avalos* court's addressing the magistrate's decision "in the same manner as other criminal appeals" to be the proper procedure for an appeal of the decision.

Next, Hartpence argues the decision that he should be prosecuted as an adult increases the penalty for an offense; therefore, such decision should be made by a jury beyond a reasonable doubt pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

Hartpence lists his possible dispositions as a juvenile and then compares that to the potential sentences on the sentencing guidelines grid for commission of severity level 1 and 3 crimes. There apparently are no factually similar cases to support his argument. He does cite the language in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

The State responds that *Apprendi* should not be extended to the case at bar. The State argues the magistrate's decision to try a juvenile as an adult is a jurisdictional determination, not a sentencing determination as was the case in *Apprendi* and our Supreme Court's decision following *Apprendi* in *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001).

Only a handful of cases have addressed this issue. In *Gould*, Justice Abbott in his dissent foreshadowed Hartpence's argument:

"I am troubled by other matters, although I recognize that they probably do not fall under *Apprendi*. For instance, cases frequently come before us where, if the defendant is tried as a juvenile, the most he or she will have to serve is a few years. If, on the other hand, the defendant is tried as an adult for the same offense, he or she may face up to 100 years. We have other areas of law in which similar results are reached, and although they do not fall under *Apprendi*, they seem fundamentally unfair in light of *Apprendi*." 271 Kan. at 414.

Two cases have addressed *Apprendi* in the context of juvenile matters. However, in each case the adjudication was resolved in juvenile court proceedings and then enhancement of sentence was applied following the resolution in juvenile court. *Commonwealth v. Quincy Q., a juvenile*, 434 Mass. 859, 753 N.E.2d 781 (2001); *State v. Gonzales*, 130 N.M. 341, 24 P.3d 776 (Ct. App. 2001). This type of enhancement is not applicable to the case at bar.

Kansas, as well as most other state jurisdictions, has statutes allowing a court to waive or transfer juvenile court jurisdiction and direct that a juvenile be prosecuted as an adult under the applicable criminal statute. K.S.A. 38-1636(f)(1). In making its determination of whether to try a juvenile as an adult, the court considers the eight statutory factors listed in K.S.A. 38-1636(e). We will not extend *Apprendi* to the level of proof necessary in establishing the factors in K.S.A. 38-1636(e).

*Apprendi* involved the sentencing phase of a prosecution. The New Jersey hate crime statute in *Apprendi* authorized an increase in the maximum prison sentence based on a judge's finding that the defendant acted with the purpose to intimidate because of, inter alia, race. 530 U.S. at 470-71. Here, we are dealing with a determination of in which court a juvenile will be tried for resolution of his or her case and not whether an individual will be sentenced beyond the statutory maximum. This decision is akin to a jurisdictional determination. The court in *State v. Muhammad*, 237 Kan. 850, 856, 703 P.2d 835 (1985), stated of the process:

"While a waiver hearing involves a substantial right subject to the requirements of due process, it is not adjudicatory in nature in that it does not result in any determination of guilt or innocence or in confinement or punishment. It is merely

a preliminary process to determine the type of adjudicatory procedure to be carried out at a later date. The only decision is dispositional in that the court determines whether further proceedings will be under the juvenile offenders code or under the Kansas criminal code."

Also, a juvenile court system, in which juveniles are given preferential treatment, is not constitutionally required. The court in *Commonwealth v. Wayne W.*, 414 Mass. 218, 223, 606 N.E.2d 1323 (1993), stated: "A State that elects to commit to its judiciary the responsibility of determining whether [an individual] will be tried as a juvenile or an adult . . . must observe only the constitutional due process requirement of essential fairness."

The determination of whether a juvenile should be tried as an adult is made by a court after considering the statutory factors in K.S.A. 38-1636(e). We hold a court's determination of the matter does not offend *Apprendi*.

Last, Hartpence argues the presumption in K.S.A. 38-1636(a)(2) that he is an adult violates his constitutional rights under the Due Process Clause. Hartpence acknowledges that his argument has been rejected by the Kansas Supreme Court in *State v. Coleman*, 271 Kan 733, 26 P.3d 613 (2001). However, he states he is preserving the issue for any subsequent federal appeal.

The *Coleman* court stated: "The presumption in K.S.A. 38-1636(a)(2) is rebuttable. The presumption does not improperly shift the burden of proof to the defendant on any elements of the offenses charged. The presumption in K.S.A. 38-1636(a)(2) does not violate procedural due process rights." 271 Kan. at 738.

The Court of Appeals is duty bound to follow Kansas Supreme Court precedent, absent some indication the court is departing from its previous position. *Gadberry v. R.L. Polk & Co.*, 25 Kan. App. 2d 800, 808, 975 P.2d 807 (1998). There is no indication the Supreme Court is departing from its previous position.

Affirmed.